(No. 25052.—

AXEL H. LARSON *et al.* Appellants, *vs.* THE CITY OF ROCK-
FORD *et al.* Appellees.

*Opinion filed April 19, 1939—Rehearing denied June 13, 1939.*

442

JONES, FARTHING, and WILSON, JJ., dissenting.

WILLIAM D. KNIGHT, for appellants.

A. V. ESSINGTON, Corporation Counsel, CARROLL H. NELSON, City Attorney, and WILLIAM H. BARRICK, for appellees.

Mr. JUSTICE ORR delivered the opinion of the court:

The city of Rockford adopted an ordinance in May, 1939, exacting license fees of persons maintaining and operating automatic vending machines for the sale of candy, peanuts, soft drinks, pop-corn and gum. Axel H. Larson, a resident of Rockford, and the Northwest Canteen Company, an Illinois corporation, filed a complaint in the circuit court of Winnebago county for an injunction to restrain enforcement of the ordinance, claiming violation of certain provisions of the State and Federal constitutions. A temporary injunction was granted, but, after a hearing, it was dissolved and the complaint was dismissed for want of equity. This appeal followed.

The ordinance provides for the issuance of licenses by the city clerk upon evidence that the applicant, if an individual, or the person in charge of the business, if it is a firm or corporation, is a responsible person of good character and reputation having a residence or business address in the city of Rockford. For each vending machine requiring a deposit of five cents the annual license fee is $3. For one-cent machines maintained by a single operator the scale of fees ranges from $3 per annum for one to five machines down to twenty-five cents per machine for over one hundred machines. The ordinance further requires the city health commissioner to inspect and to make chemical analyses of samples of food and drink offered for sale in the automatic vending machines to ascertain whether the products dispensed are fresh, clean and wholesome. Other provisions are made for inspection of locations to ascertain whether the products vended are free from contamination.

Section 50 of article 5 of the Cities and Villages act (Ill. Rev. Stat. 1937, chap. 24, par. 65.49) empowers municipalities "to regulate the sale of meats, poultry, fish, butter, cheese, lard, vegetables, and all other provisions, and to provide for place and manner of selling the same and to

control the location thereof." Although candy, peanuts, soft drinks, pop-corn and gum are not specifically enumerated in this statute, it is clear in view of our previous decisions that the phrase "all other provisions" brings these food products within its terms. (*City of Chicago* v. *Arbuckle Bros.* 344 Ill. 597, and cases cited.) Section 53 of the same article provides for inspection of certain enumerated foods "and other provisions," and section 78 gives cities and villages the power "to do all acts, make all regulations, which may be necessary or expedient for the promotion of health or the suppression of disease." (Ill. Rev. Stat. 1937, chap. 24, pars. 65.52 and 65.77.) The danger of stale, moldy or wormy confections, and of short weight, is sufficiently borne out by the record to warrant regulation of automatic vending machines by the municipality.

When the power to regulate certain subject matter has been granted to a city, it includes the power to exact a license fee for the purpose of defraying all or part of the cost of the regulation and inspection. (*Crackerjack Co.* v. *City of Chicago,* 330 Ill. 320.) So long as the ordinance contains genuine regulatory provisions it cannot be condemned as an attempt to exact a license fee for the sole purpose of raising revenue. (*Fligelman* v. *City of Chicago,* 348 Ill. 294.) It is true that the license fee which a municipality may exact is limited to an amount which will bear some reasonable relation to the additional burdens and expenses imposed on the city, (*Condon* v. *Village of Forest Park,* 278 Ill. 218,) but the mere probability that the license fee may exceed, in some degree, the expense of issuing the license and inspecting the business will not render the ordinance invalid as a revenue measure. (*City of Chicago* v. *Ben Alpert, Inc.* 368 Ill. 282; *City of Peoria* v. *Postal Telegraph Co.* 274 id. 568; *Kinsley* v. *City of Chicago,* 124 id. 359.) The fee of $3 per year fixed by the city council for the privilege of maintaining an automatic vending machine which requires a deposit of five cents is not, in itself, shock-

ing or unreasonable and cannot be so regarded in the absence of proof. The record here shows that this fee must pay for services performed by the city clerk in printing and issuing the license tag, collecting the license fee and keeping the records thereof; it must also cover the expense of the city health department in making the initial inspection of the location of the machine, periodical inspections of its products, and laboratory analyses of samples. The facts that no additional personnel has thus far been required by the city and that no salaries have been raised do not justify the assumption that the ordinance can be enforced without expense to the city. Regular employees may have been released from other duties to handle the work. Authentic cost records are not available, as the ordinance was in operation only a few days when plaintiff obtained a temporary injunction restraining its enforcement. There is no evidence in the record to indicate that the amount of fees will greatly exceed the expenses of administration. The burden of proof was upon plaintiffs to show lack of any reasonable relation between the fee and the cost of enforcement, (*Stearns* v. *City of Chicago,* 368 Ill. 112; *City of Chicago* v. *Waters,* 363 id. 125;) and, in our judgment, they have failed to sustain that burden.

The ordinance is not invalid because it requires licensees either to be residents of Rockford or to maintain a business address in that city. Arbitrary discrimination between residents and non-residents in the issuance of licenses or the fees charged will invalidate a municipal ordinance, (*City of Elgin* v. *Winchester,* 300 Ill. 214,) but the ordinance before us neither prohibits issuance of licenses to non-residents nor exacts a higher fee from non-residents than from residents. The ordinance was adopted by the city council under its power to regulate the sale of provisions for the protection of the public and to promote public health. Where the council reasonably exercises its legislative power over subjects properly within its legitimate field, the requirement

will be upheld. The hazards of purchasing from vending machines include loss of the deposited coin because of failure of the machine to function, delivery of products of a different brand, quality or weight than represented, and the dispensing of stale, spoiled or contaminated products. In consideration of these factors the city council might reasonably have believed that public safety and health would be promoted by requiring operators of vending machines to maintain a place where inspectors of the city health department might communicate with them regarding location and contents of the machines, and where customers might register complaints and receive adjustments. The use of automatic vending machines eliminates employees at the place of sale and distribution. Under such circumstances, we believe the council was warranted in requiring every operator to establish a residence or business address in the city for the protection of customers and to facilitate enforcement of the ordinance. That this is no hardship is evidenced by the fact that both plaintiffs in this case maintain warehouses in Rockford for storing supplies with which to service their machines.

The ordinance is not discriminatory because a confectionery store in Rockford may maintain as many cases of candy for a \$3 fee as its proprietor desires, while operators of automatic vending machines must pay \$3 per machine, even though several may be located on the same premises. The evidence shows that five-cent vending machines are not ordinarily located in close proximity to each other—even those on the same premises are usually on different floors. It seems to us a reasonable exercise of its legislative functions for the city council to treat each vending machine as a separate unit for inspection purposes. Likewise, we find nothing arbitrary in the fact that automatic machines dispensing confectionery are regulated by one ordinance and retail confectionery stores by another. There are obvious distinctions which make such a classification reasonable. The maximum fee exacted by each ordinance is the same.

The fact that the ordinance exacts a larger license fee for operation of five-cent machines than for one-cent machines does not necessarily render it void. The prevailing rule is that the fee should bear a reasonable relation to the cost of regulation. (*Metropolis Theater Co.* v. *City of Chicago,* 246 Ill. 20; *Condon* v. *Village of Forest Park, supra.*) Under this rule, we believe the city council, in its discretion, was justified in exacting a smaller fee in the case of one-cent machines. The record shows that typical five-cent machines are larger and have at least five compartments, each containing different kinds of candy. Each compartment and its contents must be inspected at intervals to insure freshness and cleanliness, and each kind of candy must be subjected to laboratory analyses. The majority of one-cent machines are used for dispensing nuts and gum in bulk and contain only one or two varieties. In some cases their entire content is visible through a glass bowl or front. Thus, the work both of inspection and of laboratory analyses is greatly reduced. The evidence also indicates that while only one five-cent machine is ordinarily placed at a given location, the same operator often maintains two or more penny-machines at the same location. This fact warrants some reductions in fees where a single operator controls a large number of machines. The difference in cost of inspecting and regulating the two types of machines is a disputed question, but we are not able to say that the council was not justified in making a classification on that basis, nor can we say from the evidence that such classification resulted in an unreasonable discrimination. While the power to classify must be exercised in a reasonable manner, "a very wide range of discretion is allowed legislative bodies in the exercise of this power." *Metropolis Theater Co.* v. *City of Chicago, supra.*

The decree is affirmed.

*Decree affirmed.*

JONES, FARTHING, and WILSON, JJ., dissenting.