(Nos. 42433, 42651, 42881, 42882, 42915 cons.—

ROSEWOOD CORPORATION *et al.,* Appellees, *vs.* CHESTER J. FISHER *et al.,* Appellants.

*Opinion filed April 15, 1970.—Rehearing denied October 6, 1970.*

Schaefer, J., took no part.

William R. Ming, Jr., and Aldus S. Mitchell, of McCoy, Ming & Black; Thomas B. McNeill, Robert M. Berger, John R. Schmidt and David Frick, of Mayer, Friedlich, Spiess, Tierney, Brown & Platt; Thomas P. Sullivan, John G. Stifler and David C. Roston, of Jenner & Block; and Thomas J. Boodell, Jr., and Marshall Patner, of Patner & Karaganis, all of Chicago, for appellants.

Burton Y. Weitzenfeld, Jacob J. Gordon, and John F. McClure, all of Chicago, (Arnstein Gluck, Weitzenfeld & Minow, of counsel,) for appellees.

Per curiam: We here consider consolidated appeals, prosecuted from judgments for possession entered by the circuit court of Cook County in favor of plaintiffs, which present issues relating to the construction and constitutional validity of the Forcible Entry and Detainer Act, (Ill. Rev. Stat. 1967, ch. 57,) the distinctive and limited purpose of which is to supply a speedy remedy to permit persons entitled to the possession of lands to be restored thereto. *Wall v. Goodenough* (1855), 16 Ill. 415.

General factual background reveals that all the defendants are members of the Negro race who, at various times during the 1960's, entered into installment contracts for the purchase of residential properties. Some were of new

construction; others were older properties. The plaintiffs-sellers, for the most part, were developers and builders of residential areas, and others dealing in the sale of real estate. Generally speaking, it appears that the contract prices for new residences were in the vicinity of $25,000. Monthly installments on such contracts ranged from $140 to $160. Defendants, for the most part, complied with their contracts and accumulated equities in their respective properties until 1968 when a general feeling of dissatisfaction arose among the contract buyers stemming from beliefs that they had been overcharged for their properties, and that unfair advantage and discrimination, made possible by the social and economic problems encountered by members of their race in the purchase of suitable residence properties, had been practiced against them. We do not find, however, nor have we been so advised, that any of the contract purchasers then took any affirmative steps to pursue State remedies for obtaining judicial relief from the allegedly unconscionable contracts. Instead, they appear to have embarked upon a concerted course of self-determination and self-help, for an apparent purpose of securing a modification and renegotiation of their contracts, and stopped making their installment payments. In so doing, they defaulted on their contract obligations and, by the terms of the contracts, exposed themselves to forfeiture of their contract rights and equities and to suits for possession.

Early in 1969 two class actions, predicated on section 3 of the Civil Rights Act of 1866 (42 U.S.C. § 1982; and see: *Jones* v. *Alfred H. Mayer Co.* (1968), 392 U.S. 409, 20 L. Ed. 2d 1189, 88 S. Ct. 2186), were filed in a Federal district court on behalf of contract purchasers of both new and old properties. In those actions it was alleged that the contracts were unlawful and in violation of various constitutional and statutory rights of the purchasers, and the relief requested was that the payment and forfeiture provisions be declared presently unenforcible and that the con-

tracts be rescinded or reformed. We digress to state that these actions are still pending, a panel of three judges having decided on February 11, 1970, at the instance of the contract sellers, to follow a course of abstention until the issues of the present case have been decided.

In May, 1969, the Federal actions withstood motions by the contract sellers to have them dismissed and, commencing at about that point of time, the sellers proceeded with forcible entry and detainer actions, now numbering in the hundreds, in the circuit court of Cook County. And it is from this background that the principal issues in the present appeal have arisen. As noted, all of such actions have concluded with judgments for possession being entered for the plaintiffs. Some of the defendants perfected appeals; some sought to appeal by filing notice but suffered dismissal for failure to file an appeal bond as required by sections 18 and 19 of our Act, (Ill. Rev. Stat. 1967, ch. 57, pars. 19, 20,) while still others took no steps toward an appeal. Where appeals were not perfected, evictions reaching mass proportions have followed.

During September, 1969, some 370 contract buyers filed a declaratory judgment action in the circuit court of Cook County for a declaration that certain defenses which were being denied to defendants in the actions for possession could be advanced and litigated, or an alternative declaration that the Forcible Entry and Detainer Act was unconstitutional if it was to be construed as meaning that such defenses could not be advanced and litigated. This action, the caption of which was *Alexander et al.* v. *Hamilton Corporation et al.*, was dismissed on motion of the defendants thereto and the plaintiffs perfected an appeal to the appellate court. We have since allowed the appeal to be transferred to this court and have caused it to be consolidated with appeals taken from the forcible entry and detainer actions.

The first of the appeals from the judgments for posses-

sion to reach this court was in the case of Rosewood Corporation, plaintiff-appellee versus Chester J. Fisher and Julia M. Fisher, defendants-appellants. And although notice of appeal was filed May 23, 1969, it was not until January 21, 1970, that the record on appeal was filed in this court. In addition to constitutional questions, this appeal, as shall subsequently be discussed in greater detail, also raised an issue, involving a construction of the Forcible Entry and Detainer Act, as to whether the trial court erred in refusing to permit certain defenses relied upon by defendants to be pleaded and heard. Thereafter, on January 22, 1970, we permitted the appeal in Lawson Corporation v. Jackson to be transferred to this court from the appellate court and to be consolidated with Fisher, inasmuch as a similar issue relating to defensive pleadings was involved. By subsequent orders continuing up to the time this court convened for its March, 1970, Term, we caused some 156 additional appeals to be consolidated with Fisher either by permitting their transfer from the appellate court, or by granting defendants who had suffered adverse judgments in the trial court to file notices of appeal to this court. In all of these additional cases, as in Fisher and Jackson, there is involved a construction of our Act insofar as it relates to the pleadings of defendants.

Section 2 of the Forcible Entry and Detainer Act provides in pertinent part that a person entitled to possession of lands may maintain an action and be restored to possession: "Fifth, When a vendee having obtained possession under a written or verbal agreement to purchase lands or tenements, and having failed to comply with his agreement, withholds possession thereof, after demand in writing by the person entitled to such possession." (Ill. Rev. Stat. 1967, ch. 57, par. 2.) Section 5 thereafter provides that a person entitled to possession may initiate an action by filing a complaint in the circuit court of the county where the premises are situated and then continues: "The defendant may under

a general denial of the allegations of the complaint give in evidence any matter in defense of the action. *No matters not germane to the distinctive purpose of the proceeding shall be introduced by joinder, counterclaim or otherwise: * * *.*" (Emphasis added.) But it is clear that matters germane to the distinctive purpose of the action may be introduced by a defendant by way of counterclaim or otherwise, inasmuch as section 11 of the Act directs that: "The provisions of the Civil Practice Act, and all existing and future amendments of said Act and modifications thereof, and the rules now or hereafter adopted pursuant to said Act, shall apply to all proceedings hereunder in courts, except as otherwise provided in this Act." Indeed, it was not until the Civil Practice Act was adopted that the words emphasized in the quotation from section 5, appearing above, were added to the section. (*Cf.* Ill. Rev. Stat. 1933, ch. 57, par. 5, with Ill. Rev. Stat. 1935, ch. 57, par. 5.) And so far as the distinctive purpose of the Forcible Entry and Detainer Act is concerned it has been accurately and succinctly stated in *Bleck* v. *Cosgrove,* 32 Ill. App. 2d 267, 272 that: "Forcible entry and detainer is a summary statutory proceeding to adjudicate rights to possession and is unhampered and unimpeded by questions of title and other collateral matters not directly connected with the question of possession."

In the Fisher and Jackson cases, whose pleadings are treated upon severally and taken as being representative of those in all the possession cases to which this appeal has been extended, the defendant sought to introduce by way of answer, counterclaim or affirmative defense, various matters going to the validity and enforcibility of the contracts upon which plaintiffs based their claim of a right to possession. Included were allegations that the contracts were unconscionable and unenforcible; that they were usurious; that they were extracted and induced by fraud; and that they were in violation of the civil and various constitutional rights of the defendants. And while a contention is made

by plaintiffs that such matters were improperly and insufficiently pleaded, that issue is not open to our consideration. It is well settled that the sufficiency of a pleading may not be attacked for the first time in a court of review. (*McFail v. Braden,* 19 Ill.2d 108, 120.) On motion of plaintiffs, the trial court struck the defensive pleadings challenging the validity and enforcibility of the contracts on the ground that they were not germane to the issue of right to possession and therefore prohibited by section 5 of the Act. Defendants now contend that such a construction of the section causes the Act to violate constitutional guarantees of equal protection and due process of law, and various other provisions of our State and Federal constitutions. It is broadly asserted, too, that such a construction of the Act in its application to contract purchasers of land causes it to be an arbitrary and discriminatory measure against poor persons and members of minority groups who are unable to obtain mortgage financing when they purchase residences. In the view we take, however, these constitutional claims are not reached and need not be decided. See: *Bismarck Hotel Co. v. Petriko,* 21 Ill.2d 481; *City of Detroit v. Gould,* 12 Ill.2d 297.

Limiting ourselves to a consideration of the act only so far as it applies to contract purchasers of land, this case is, so far as we can ascertain, one of first impression in this court. It is our opinion that the defenses going to the validity and enforcibility of the contracts relied upon by the plaintiffs were germane to the distinctive purpose of the forcible entry and detainer actions and were improperly stricken. That purpose, to repeat, is to restore possession to one who is entitled to the right of possession. "Germane" has been judicially defined as meaning "closely allied," and is further defined in Webster's New Twentieth Century Dictionary, p. 767, as, meaning: "closely related; closely connected; relevant; pertinent; appropriate." Where as here, the right to possession a plaintiff seeks to assert has its

source in an installment contract for the purchase of real estate by the defendant, we believe it must necessarily follow that matters which go to' the validity and enforcibility of that contract are germane, or relevant, to a determination of the right to possession. This is particularly true for two reasons. First, because a contract buyer becomes the equitable owner of the property upon execution of an installment contract, (*Shay* v. *Penrose,* 25 Ill.2d 447, 449,) and thus by such an action may be stripped of his equitable ownership as well as possession; second, the contract purchaser is faced not only with the loss of possession, but, unlike a tenant, trespasser or squatter, is likewise faced with the loss of the equity accumulated by payments made on the contract. Here, for example, the Fishers had paid approximately $10,000 toward satisfaction of their total contract obligations. On the other side of the coin, a contract seller claiming and seeking to enforce a claimed right of possession should not be permitted to prevail on the basis of such contract so long as its validity and enforcibility is questionable under the law. Should a contract purchaser not be permitted to defend upon the very contract upon which the seller relies, in our judgment the result could be, as argued, a direct denial of constitutional rights and an indirect denial of civil rights. We believe that contract buyers may plead equitable defenses and be given equitable relief if it is established that the contracts are unconscionable or in violation of civil rights as here contended. *Cf. Horner* v. *Jamieson,* 394 Ill. 222; *Stein* v. *Green,* 6 Ill.2d 234.

Section 11 of the Forcible Entry and Detainer Act provides that the rules of practice and pleading in other civil cases shall apply to detainer actions, and, as previously noted, contemporaneously with the enactment of the Civil Practice Act section 5 of the detainer act was amended in terms which permits matters germane, (*i.e.,* closely allied; closely related, closely connected; appropriate;) to be introduced by a defendant. The fusion of the practice and pro-

cedure in suits at law and in equity accomplished by the Civil Practice Act is, in our opinion, sufficient to permit necessary equitable relief in these proceedings, rather than to force upon defendants a separate proceeding where the same relief will be forthcoming. *Cf. Ellman* v. *De Ruiter,* 412 Ill. 285; *Nikola* v. *Campus Towers Apartment Bldg. Corp.* 303 Ill. App. 516.

A necessary concomitant of the seeking of relief through equity is a willingness to do equity. This is fundamental in equity jurisprudence. The invocation by defendants of equitable defenses necessarily requires that the trial court exercise its discretion by ordering such payments as the court deems proper and any other equitable arrangements protective of the property and the interests of all parties during the pendency of the litigation.

It does not escape us that the construction we have placed upon the act may interfere with the summary aspects of the remedy, when it is invoked against contract purchasers. But the right of such purchasers to be heard on relevant matters, and to be secure in their constitutional rights, as well as the desirable purpose of preventing a multiplicity of suits, is, and must be, superior to the desire to provide a speedy remedy for possession.

Section 3 of our Act deals with the demand for possession which must precede the filing of a complaint for possession and, so far as pertinent at this time, provides the following: "* * * in case there is a contract for the purchase of such lands or tenements, notice that a proceeding under the provisions of this Act is to be instituted shall be given to the purchaser under such contract at least thirty days prior to the institution of such proceeding, * * *. Which demand for possession *may be* in the following form:

To_____

    I hereby demand immediate possession of the following described premises: (describing the same.)

Which demand shall be signed by the person claiming such possession, his agent or attorney." Ill. Rev. Stat. 1967, ch. 57, par. 3; emphasis added.

It is the contention of the defendant Fisher that the form of demand permitted violates the requirements of due process and equal protection for reason that it fails to give persons sought to be dispossessed adequate notice of the claims against them. While the authorities upon which Fisher relies to support this theory are of doubtful application to a demand, as distinguished from a pleading, an examination of the record reveals that he is in no position to raise this objection. The plaintiff caused to be served on defendant both a "Demand For Strict Compliance With Contract And Warning Notice Pursuant To Forcible Entry and Detainer Act" (February 12, 1969), and a "Notice Of Forfeiture And Demand For Immediate Possession" (March 26, 1969,) which were couched in terms which adequately and completely informed defendant of the claim against him. Defendant thus lacks standing to attack the form suggested by the act. It has been stated many times that this court "will not determine the constitutionality of the provisions of an act which do not affect the parties to the cause under consideration, or where the party urging the invalidity of such provisions is not in any way aggrieved by their operation." *Schreiber* v. *County Board of School Trustees of Peoria County*, 31 Ill.2d 121, 125, and cases there cited.

Supported only by a reproduction of the minute sheet compiled by the various trial judges, the plaintiff in the Jackson case has made a motion in its brief for the dismissal of that appeal on the ground that defendants failed to file their appeal bond within 5 days from the rendition of judgment as required by section 18 of the Forcible Entry and Detainer Act. (Ill. Rev. Stat. 1969, ch. 57, par. 19; see: *Long* v. *Long*, 51 Ill. App. 2d 401.) With regard to motions in reviewing courts, it is there stated: "When the motion is

based on facts that do not appear of record it shall be supported by affidavit." (43 Ill.2d R. 361) The minutes of a trial judge do not constitute a record of the proceedings of the court, (*Mitchell* v. *Van Scoyk,* 1 Ill.2d 160, 175; *Gurnea* v. *Seeley,* 66 Ill. 500; *McCormick* v. *Wheeler, Mellick & Co.,* 36 Ill. 114,) and the requisite affidavit to support plaintiff's motion has not been filed.

Accordingly, and for the reasons stated, the judgments in the Fisher and Jackson cases are reversed, and the causes are remanded to the circuit court of Cook County for further proceedings in accordance with the views expressed in this opinion. The same disposition is made in those appeals which have been transferred to this court and consolidated with Fisher, wherein notice of appeal and appeal bond were filed within the 5-day period required by the Act and wherein defensive pleadings germane to the issue were stricken.

This leaves for consideration the balance of the 156 appeals from judgments for possession wherein we permitted the filing of notices of appeal to this court and consolidated with Fisher. Upon reconsideration, we conclude that consolidation was improvident. While all involve issues relating to the construction or validity of the appeal and bond provisions of the Act, they were, for the most part, allowed to be brought to this court on the eve of oral argument in the Fisher and Jackson cases and subsequent to the time that briefs had been filed. We therefore hold these appeals under advisement and, under the circumstances, hold that the parties thereto may file such motions and briefs as they deem desirable in accordance with the regular briefing schedule of this court computed from the date of filing of this opinion. The same disposition is made of Independence Homes, Inc. v. Robert Durham, wherein an appeal was reinstated by an order of March 10, 1970, and the cause consolidated with Fisher.

We further conclude that the appeal in Alexander, the

declaratory judgment action, was improvidently consolidated with Fisher. It, too, will be held under advisement.

*Judgments either reversed and remanded, with directions; or held under advisement.*

Mr. JUSTICE SCHAEFER took no part in the consideration or decision of this case.