QUAD CANTEEN SERVICE CORP. *et al.*, Plaintiffs-Appellants, *v.* LEONARD RUZAK *et al.*, Defendants-Appellees.

Second District   No. 79-515

Opinion filed June 17, 1980.

Lawrence T. Stanner & Assoc., of Chicago, and Fawell, James & Brooks, of Naperville, for appellants.

Todd Faulkner, of Klein, Thorpe & Jenkins, Ltd., of Chicago, for appellees.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Plaintiffs, owners and operators of various vending machines in the Village of Burr Ridge (the vendors), sought declaratory and injunctive relief against the village's vending machine licensing ordinance. The defendants are the village and various of its officials (the village). The trial court found the ordinance unconstitutional, finding that the fee schedule far exceeded the reasonable cost of administration and enforcement of the ordinance. The court also enjoined future enforcement of the ordinance, but declined to order a refund of the fees paid under protest by the vendors. The vendors appeal from the court's refusal to order a refund, and the village cross-appeals on the issue of the validity of the ordinance.

The Village of Burr Ridge has a population of about 2500 persons and and area of about 4 square miles. At the time of the adoption of the ordinance on June 16, 1975, and its amendment on August 21, 1978, there were various licensed vending machines, most of which were located in one or two industrial parks. The license fees set by the 1975 ordinance were as follows: For food and beverage machines, $50 per year; for nonfood or nonbeverage items, $25 per year; for tobacco products and cigarettes, $75 per year; and for all other coin-operated machines, $15 per year. The ordinance, as amended in 1978, reduced the food and beverage fee to $40, the cigarette fee to $30, and set the fee for all other products at $20 per year. Leon LeDesma, a police officer of the village, was appointed health officer and under his additional duties conducted the first inspection of vending machines in March 1976. The inspection took him a total of about 20 hours.

John Hallock, also a police officer of the village, replaced LeDesma in 1977 and conducted three inspections of vending machines, one in 1977 and two in 1978. In addition to the exterior inspection, Hallock took two samples of milk contained in the cartons placed in the vending machine and submitted them to laboratory analysis during one of his inspections.

Hallock's time log indicated that he spent a total of 61¼ hours enforcing the ordinance during 1977 and 1978. It appeared from the testimony of those appointed by the village to enforce the ordinance that the costs of inspection were in the neighborhood of $2 or $3 per machine based on their time and pay.

The vendors also called three expert witnesses, who testified as to the costs of vending machine inspections, the procedures used in their departments to make inspections, and the potential hazards associated with vending machines. One expert, Elmo Smyth, from the Wisconsin

Department of Public Health, with long experience in the department in Wisconsin charged with the responsibility of licensing and inspecting vending machines in the State of Wisconsin, testified as well as Robert Gary Peters, a sanitarian employed by the Stickney Public Health Service, and William Embry, chief of the division of the Community Health Protection for the Evanston North Shore Health Department and a registered sanitarian. Each testified that their inspectors accompanied the vending machine employee so as to be able to inspect the inside of a machine. This generally included checking the temperature of machines containing potentially hazardous foods, testing automatic shutoff devices, exterior inspection as to placement and location and checking for vermin and roaches. None of the departments the experts represented take laboratory samples of products as part of their inspection nor does any program of which they are aware. There was testimony that the inspection takes 4 to 5 minutes per machine and that most of the inspector's time is spent in travel. In response to hypothetical questions assuming the facts with respect to the vending machines in Burr Ridge, the experts agreed that an inspection of all machines would take one person 1 or 2 days. They generally agreed that the cost of regulation including overhead and support staff would be no more than $3-$4 per machine.

The village offered no evidence in rebuttal at the hearing, relying on the presumption of validity of the ordinance.

The village does not contend that it has the power to tax vending machine operators; thus, the inquiry is whether the ordinance may be sustained as a licensing measure. In this connection the village argues that the reasonable cost of regulation could be much higher than that incurred in the past since laboratory sampling would cost $15 or more per machine and might be done on a larger scale. They also argue that the vendors failed to offer any evidence of the cost of issuing the licenses and keeping records and therefore did not fully meet their burden of showing the entire cost of regulation.

■■ License fees which may be charged must bear some reasonable relationship to the costs of regulation and administration, but "the mere probability that the license fee may exceed, in some degree, the expense of issuing the license and inspecting the business will not render the ordinance invalid as a revenue measure. [Citations.]" (*Larson v. City of Rockford* (1939), 371 Ill. 441, 444.) The burden of proof is upon those seeking to invalidate the fees to prove the absence of any reasonable relationship. (*Larson*, at 445.) "A license fee may, however, be so grossly excessive as to be deemed arbitrary and unreasonable as a matter of law." *City of Chicago Heights v. Public Service Co.* (1951), 408 Ill. 604, 609; see also *City of Peoria v. Postal Telegraph-Cable Co.* (1916), 274 Ill. 568, 574.

The testimony demonstrates that the costs of inspection were approximately $2-$3 per machine. There was no testimony as to the additional cost incurred by the village in administering the program, including the issuance of licenses, record keeping and similar administrative expenses. However, the vendors introduced the testimony of expert witnesses to prove that the cost of regulation including overhead and support staff would be no more than $3-$4 per machine. It is also evident from the record that no inspection was made for 8 or 9 months after the ordinance was enacted and then only after the lawsuit was filed; that the persons who made the inspection had no special training; and that the inspections amounted to little more than ascertaining whether the machines had a license sticker.

The village offered no evidence in rebuttal, and in view of the circumstances, we conclude that its reliance on the presumption of the validity of the ordinance is unjustified. The cases relied upon by the village are distinguishable. The village argues that the fact that they have not done more extensive inspections and sampling of the products is not material since the ordinance would permit that type of enforcement, citing *American Baking Co. v. City of Wilmington* (1938), 370 Ill. 400, 404. In *American Baking Co.* an annual license fee for each vehicle used for the purpose of storing or delivering products intended for human consumption in the city was subject to an annual license fee for each vehicle fixed at $15 by the city ordinance, with various exemptions. The court upheld the fee, but it does not appear that in that case any evidence was offered as to the costs of regulation; it was merely argued that the regulatory ordinances were not in fact being enforced. The ordinance before us requires inspection but does not specify how often they must occur; it states that samples "may be analyzed" but does not purport to require laboratory analysis.

*Keig Stevens Co. v. City of Savanna* (1942), 380 Ill. 303, is cited by the village as authority for allowing fees seven and one-half times greater than costs. However, the license fee for vehicles delivering foodstuffs was $15 and the court found that the testimony of the mayor of another city that costs of inspection and licensing in his opinion would be at most $3 per vehicle would not be given substantial weight since the opinion was not based on knowledge of conditions in the city of Savanna and was otherwise devoid of factual support. (380 Ill. 303, 307.) Here there was detailed expert testimony of three men who managed licensing and the inspection and who did give an informed opinion based upon a hypothetical question which included all relevant conditions in the licensing village.

■■ We conclude that the trial court's finding that the ordinance was unconstitutional because the fee schedule far exceeded reasonable costs

of administration and enforcement of the ordinance is fully supported by the evidence.

The order from which this appeal has been taken states that the court declines to order a refund of fees paid by the vendors. The record is otherwise barren of evidence of either a motion for a refund or a hearing on that issue. The village concedes that, generally, a refund of fees follows from a finding that an ordinance is void. (See, *e.g.*, *Ross v. City of Geneva* (1978), 71 Ill. 2d 27, 33. See also *People v. Meyerowitz* (1975), 61 Ill. 2d 200, 212.) However, it argues that no proof of damages was offered by the vendors and that therefore the trial court properly denied a refund. The vendors argue that in their pleadings they did not ask the court to make a factual determination of the amount due them but only to order refunds pursuant to the village official records.

■■ We conclude that the vendors are entitled to a refund of fees paid under the void ordinance. We therefore affirm the judgment of the trial court which found the ordinance void, reverse that portion of the order which denied a refund of fees paid and remand the cause to the circuit court with directions to enter an order directing the village to refund the amounts paid by the vendors for the invalid licenses. *Scanlon v. Faitz* (1978), 57 Ill. App. 3d 649, 655.

Affirmed in part, reversed in part and remanded with directions.

WOODWARD and NASH, JJ., concur.