OAK PARK TRUST & SAVINGS BANK, as Trustee, *et al.*, Plaintiffs-Appellees, v. THE VILLAGE OF MOUNT PROSPECT *et al.*, Defendants-Appellants.

First District (1st Division)   No. 1—88—0565

Opinion filed March 7, 1989.—Rehearing denied May 1, 1989.

12

Burke & Ryan, of Chicago (Thomas T. Burke, William E. Ryan, and Barry A. Springer, of counsel), for appellants.

Richard J. Troy and William G. Hutul, both of Chicago, for appellees.

JUSTICE QUINLAN delivered the opinion of the court:

Plaintiffs in this case filed a lawsuit in the circuit court of Cook County challenging the validity and constitutionality of certain sections of the Village of Mount Prospect's landlord-tenant ordinance. Plaintiffs sought an injunction and such other relief that the court deemed appropriate. After the parties filed memoranda of law and presented oral arguments, the trial court ruled that certain disputed sections of the landlord-tenant ordinance were unconstitutional and invalid. Defendants, the Village of Mount Prospect and various village officers, now appeal from that judgment to this court. We reverse.

On September 6, 1983, the Village of Mount Prospect (Village) amended its "Residential Landlord and Tenant Regulations" by passing ordinance No. 3366 (the Ordinance). The stated purpose of the Ordinance was "to protect and promote the public health, safety and welfare of its citizens, to establish rights and obligations of the landlord and the tenant in the rental of dwelling units in the Village and to encourage the landlord and tenant to maintain and improve the quality of rental housing within the community." (Mount Prospect, Ill., Ordinance 3366, §23.1801 (September 6, 1983).) The Ordinance applied to rental agreements for dwelling units within the Village of Mount Prospect, with some exceptions.[1] Mount Prospect, Ill., Ordinance 3366, §23.1802 (September 6, 1983).

The plaintiffs here include the Oak Park Trust and Savings Bank (Oak Park Trust), which is the trustee of real estate on which there

---

[1] The Ordinance excluded rental agreements for residence at public or private medical, geriatric, educational, religious, nursing or retirement institutions; residence in a residential care home, transient occupancy in a hotel or motel licensed by the Village; rental of single-family dwellings; and rental where the tenant is also the purchaser under a contract for sale of the dwelling unit. Mount Prospect, Ill., Ordinance 3366, §23.1802(B) (September 6, 1983).

are 1,048 rental apartments; S.D.M. Realty, Inc. (S.D.M.), which is the landlord of the 1,048 rental apartments and the successor corporation to the named plaintiff, Cottonwood Management, Inc.; Salvatore Di-Mucci, the beneficiary of the land trust and an officer and shareholder of S.D.M.; and Mary Bouris, a tenant of one of the rental apartments contained in the land trust. The defendants include the Village of Mount Prospect, a home rule unit[2]; Carolyn H. Krause, the mayor of Mount Prospect; Terrance L. Burghard, the village manager of Mount Prospect; and Carol A. Fields, the village clerk of Mount Prospect.

The plaintiffs filed a six-count complaint seeking an injunction and any other appropriate relief, claiming that the Ordinance was illegal, void, and unenforceable because: (1) it allowed tenants to withhold rent payments for alleged building violations; (2) it allowed tenants to pay the withheld rents to the Village of Mount Prospect, to be held by the Village as trustee of the funds; (3) it allowed tenants to file counterclaims in forcible entry and detainer actions; (4) it required all owners or landlords of multifamily dwelling units located within the Village of Mount Prospect to be licensed; (5) it charged a licensing fee based on the number of rental units; and (6) it allowed landlords to collect the license fee from tenants.

The defendants filed an answer to the plaintiffs' complaint and also filed a counterclaim seeking a declaratory judgment that the Ordinance was valid. Thereafter, the defendants filed a motion for summary judgment, but the circuit court of Cook County denied the motion for summary judgment in a written order.

Subsequently, the parties filed memoranda of law with the trial court and the matter proceeded to trial before the court, which was sitting without a jury. At trial, the plaintiffs did not present any witnesses, but the defendants presented Michael Janonis, the acting village manager for the Village of Mount Prospect. In his testimony, Janonis said that the fees charged for the operating licenses did not even cover the expenses incurred by the Village in regulating and inspecting the rental dwellings. Following the testimony of Mr. Janonis and the presentation of oral argument by the parties, the trial court then held that the Ordinance was unconstitutional, and thus, invalid. The court then entered judgment against defendants.

The defendants raise six issues on appeal. In their first issue they argue that the trial court erroneously ruled that the Ordinance's li-

---

[2]Home rule units under article VII, section 6, of the Illinois Constitution are municipalities having a population of more than 25,000 or those municipalities which elect by referendum to become home rule units. Ill. Const. 1970, art. VII, §6(a).

censing scheme and licensing fee were beyond their police powers, were in reality a revenue raising device, and consequently, were unconstitutional under the Illinois Constitution. The pertinent section of the ordinance provides, in relevant part:

> "No dwelling structure shall be operated as a rental multiple-family dwelling structure unless the owner or landlord as defined here-in holds a current, unrevoked operating license issued by the Village of Mount Prospect for the specific named multiple dwelling.
>
> The annual fee for operating licenses for multiple family dwellings shall be $7.00 per dwelling unit. The landlord shall charge the fee to the tenants on such terms as they may agree." Mount Prospect, Ill., Ordinance 3366, §§23.1814(A)(1), (B) (September 6, 1983).

The defendants assert that the Ordinance was constitutional. Their argument here specifically addresses each of the plaintiffs' allegations below. Defendants contend (1) that the Village has the power to license landlords and that section 23.1814(A) is, accordingly, a proper regulatory measure and not a revenue raising measure; (2) the license fee set out in section 23.1814(B) is a valid fee imposed to defray costs of regulation; (3) the trial court erroneously ruled that since the owner here, a land trustee owner, had no authority to manage rental property, the requirement for owners to have a license imposed obligations beyond the police power of the Village; and (4) the trial court erroneously held that the license fee was not a fee but a tax because it was imposed on a graduated basis and could be passed on to the tenant.

■■ Article VII, section 6, of the Illinois Constitution of 1970 provides that "a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." (Ill. Const. 1970, art. VII, §6(a).) However, section 6 also provides that "[a] home rule unit shall have only the power that the General Assembly may provide by law *** (2) to license for revenue or impose taxes upon or measured by income or earnings or upon occupations." (Ill. Const. 1970, art. VII, §6(e)(2).) But later, in section 6(m), the Constitution specifically directs that the powers and functions of home rule units are to be liberally construed. Ill. Const. 1970, art. VII, §6(m).

■■ ■ It has been recognized that the power to regulate includes the power to charge a license fee in order to defray all or part of the costs incurred as a result of regulation and inspection. (*Larson v. City*

*of Rockford* (1939), 371 Ill. 441, 444, 21 N.E.2d 396, 398.) As long as the ordinance contains genuine regulatory provisions, it cannot be invalidated merely because the license fee raises revenue. (*Larson,* 371 Ill. at 444, 21 N.E.2d at 398.) The license fee, nevertheless, must bear some reasonable relationship to the cost of regulation (*Arends v. Police Pension Fund* (1955), 7 Ill. 2d 250, 253, 130 N.E.2d 517, 519; *Larson,* 371 Ill. at 444, 21 N.E.2d at 398), but the mere possibility or even the probability that the fee might exceed in some degree the cost of regulating the business does not invalidate the ordinance on the grounds that it is a revenue raising measure. (*Larson,* 371 Ill. at 444, 21 N.E.2d at 398; *Quad Canteen Service Corp. v. Ruzak* (1980), 85 Ill. App. 3d 256, 258, 406 N.E.2d 616, 618.) Additionally, the party seeking to invalidate an ordinance has the burden of proving that there is no reasonable relationship between the fees charged and the cost of regulation. *Larson,* 371 Ill. at 445, 21 N.E.2d at 398; *Quad Canteen Service Corp.,* 85 Ill. App. 3d at 258, 406 N.E.2d at 618.

■ Applying these principles to the present case, we find that the Ordinance, particularly section 23.1814(A), contains genuine regulatory provisions and that the fee assessed is not an improper revenue raising measure. The purpose, as stated in the Ordinance, of the licensing provision is to insure that multi-unit rental dwellings in the Village of Mount Prospect meet the requirements, rules and regulations as set forth in the Village code. (Mount Prospect, Ill., Ordinance 3366, §23.1814(A)(4) (September 6, 1983).) Hence, we find that the Ordinance is a valid regulation and is also within the Ordinance's stated purpose "to protect and promote the public health, safety and welfare of its citizens." (Mount Prospect, Ill., Ordinance 3366, §23.1801 (September 6, 1983).) Since the Ordinance contains genuine regulatory provisions, the licensing provision of defendants' Ordinance is valid unless the fee charged to obtain a license is unreasonable or not related to the costs of regulation.

■ Here, the defendants presented testimony that the fees charged in connection with licensing the rental units were, in fact, insufficient to cover all of the necessary costs incurred under the Ordinance in regulating landlords or owners of multi-unit rental housing. The plaintiffs, on the other hand, presented no testimony or evidence to support their claim that the license fees charged were unreasonable or unrelated to the costs of regulation. Thus, plaintiffs failed to sustain their burden of proving that there was no reasonable relationship between the licensing fees and the costs of regulation. (See *Larson,* 371 Ill. 2d at 445, 21 N.E.2d at 398; *Quad Canteen Service Corp.,* 85 Ill. App. 3d at 258, 406 N.E.2d at 618.) Based on this record, it is clear

that the fees charged here do not exceed the costs of regulation and, accordingly, we must conclude these fees were legitimately imposed. The fees are, at least, arguably necessary to defray the costs incurred as a result of the regulation and inspection scheme. In such circumstances, the Ordinance's licensing fees are constitutionally permissible.

■ The trial court also held that the licensing provision was invalid because, as it interpreted the Ordinance, the licensing provision required plaintiff Oak Park Trust to obtain an operating license, even though it had no authority under the terms of its land trust agreement to manage the property. Therefore, the court held that the license requirement went beyond the Village's power to regulate for its own government and affairs and to protect the health, safety and welfare within the community of Mount Prospect. We find the trial court's ruling and reasoning erroneous.

■ Initially, we note that the regulation of the relationships between landlords and tenants has been held to be within the police power of home rule units. The Illinois Supreme Court, in *City of Evanston v. Create, Inc.* (1981), 85 Ill. 2d 101, 421 N.E.2d 196, held that "allowing a home rule unit to control its unique problems regarding the relationship between landlord and tenant is consistent with the role of home rule." (*Create*, 85 Ill. 2d at 113, 421 N.E.2d at 201.) In *Create*, our supreme court upheld the City of Evanston's landlord-tenant ordinance. The court there distinguished the Evanston ordinance from other home rule ordinances that had been declared invalid on the basis that the Evanston ordinance, unlike the other ordinances, limited its application to leases for property within its own borders. (*Create*, 85 Ill. 2d at 110, 421 N.E.2d at 200.) In the present case, the Ordinance regulates only those leases for properties that are located within the boundaries of the Village of Mount Prospect. Hence, we find that the trial court here improperly concluded that the license requirement went beyond the limits of the Village's power to protect the health, safety and welfare of its community.

Furthermore, as defendants have observed, section 23.1814(A) only requires either the owner or the landlord to hold a current, valid operating license. The Ordinance then defines a "landlord" as the "owner, lessor or sublessor of the dwelling unit or the building of which it is a part," and defines an "owner" as one or more persons that jointly or severally are vested with all or part of the legal title to the premises or all or part of the beneficial ownership of the premises. (Mount Prospect, Ill., Ordinance 3366, §23.1803 (September 6, 1983).) Given these definitions, it is clear that the Ordinance is intended to reach the party with the authority to manage and control the property

and, by its express terms, does not reach one who is merely a land trustee without any beneficial ownership. In the present case, for example, the landlord of the property, S.D.M., is an entity that does, in fact, have the authority to manage the property, and Salvatore DiMucci, an officer and shareholder of S.D.M., is the beneficial owner of the property. Accordingly, even though Oak Park Trust does have legal title to the property as land trustee, Oak Park Trust is irrelevant to the licensing requirement under the Ordinance. Thus, the trial court also erroneously invalidated the Ordinance based on Oak Park Trust's inability to manage the trust property.

The trial court further held that section 23.1814(B) was invalid because the license fees were based on a graduated fee schedule rather than a flat fee schedule, and because the landlord could, under the Ordinance, pass the fee on to the tenant, which the court found was indicative of a tax. Initially, we note that the trial court's finding that defendants' licensing fees were based on a graduated fee schedule was not accurate. Seven dollars per unit is actually a flat fee schedule, merely determined on the basis of the number of rental units. In addition, a license fee is, in any event, valid so long as it is reasonably related to the costs of regulation. A fee may be graduated so long as the amount of the fee is fair and equitable. (9 E. McQuillin, Municipal Corporations §26.38, at 106 (3d ed. 1986).) For example, fees have been upheld that were based on the number of stores under a single management or ownership, or on the basis of the amount of square feet in the particular business location. (See 9 E. McQuillin, Municipal Corporations §26.38, at 106 (3d ed. 1986).) The basis for graduating the fee need only be reasonably connected with the subject matter and not be merely incidental to it. (9 E. McQuillin, Municipal Corporations §26.38, at 106 (3d ed. 1986).) Here, as stated above, the record does not show that $7 per rental unit was unreasonable, but rather established that, regardless of the basis of assessment, the fee was inadequate to cover the costs of regulation. Under such circumstances, the trial court erred in striking down the Ordinance on the basis that it was a graduated fee.

Furthermore, the trial court also erred in holding that the Ordinance was invalid since the license fee could be charged to the tenant. Actually, such a provision allowing a licensing fee to be passed on to the tenants has been held to be denotative (although not conclusively) that the challenged fee is not a prohibited occupation tax but a proper tax or fee. (See, *e.g., Chicago Health Clubs, Inc. v. Picur* (1988), 124 Ill. 2d 1, 9, 528 N.E.2d 978, 981; *Commercial National Bank v. City of Chicago* (1982), 89 Ill. 2d 45, 67, 432 N.E.2d 227, 237;

see also 9 E. McQuillin, Municipal Corporations §26.20, at 46 (3d ed. 1986).) In any event, and as stated earlier, the evidence here established that the fee imposed was below the costs of regulation and, hence, the ability of a landlord to pass the fee on to his tenant also does not affect the validity of the fee.

Nevertheless, the plaintiffs on appeal contend that the license fee here is really an impermissible occupation tax and not a fee at all. We find this contention to be without merit. The difference between license or inspection fees and occupation taxes is that "occupations may be licensed and a fee imposed upon them to cover the expense of licensing, inspecting and regulating them under the police power *** [while] taxes for revenue [are] imposed on occupations, without regard for policing them. *** [L]icense and inspection fees imposed by virtue of the police power on occupations are not occupation taxes for revenue." (9 E. McQuillin, Municipal Corporations §26.19, at 43 (3d ed. 1986).) As observed above, the defendants presented evidence here that the licensing scheme was a proper, regulatory measure and, thus, the licensing fees are a valid means to defray the costs of this regulation. Additionally, as also noted, plaintiffs failed to provide any evidence that the licensing scheme was either designed to be a revenue raising tax or that the fees actually imposed were unrelated to the costs of regulation.

Defendants' second contention on appeal is that the Illinois Real Estate License Act of 1983 (Ill. Rev. Stat. 1987, ch. 111, par. 5801 *et seq.*) did not preempt the enactment of the Ordinance by the Village of Mount Prospect. Plaintiffs raised this issue in their complaint and raise it again on appeal, but the trial court did not directly address the issue in its order. However, we will address this issue since it involves a constitutional challenge which could be raised at another time.

■■■ While a reviewing court will defer to the trial court's findings concerning factual issues, the scope of review on questions of law is an independent review and the court need not defer to the trial court's reasoning on findings of law. (*In re Marriage of Skinner* (1986), 149 Ill. App. 3d 788, 791, 501 N.E.2d 311, 313; *Hatton v. Money Lenders & Associates, Ltd.* (1984), 127 Ill. App. 3d 577, 582, 469 N.E.2d 360, 364.) Therefore, for purposes of our review, it is not important that the trial court did not pass on this issue.

Plaintiffs alleged in their complaint that the Ordinance was preempted by the Illinois Real Estate License Act because, they asserted, it is possible that a real estate broker, who was licensed under the Real Estate License Act, might also be a landlord or owner of a multi-unit rental dwelling and, under the Ordinance, be required to obtain a li-

cense even though he had already been licensed under the real estate statute. This would be, they contend, contrary to the express provisions of the real estate statute, which makes the statutory scheme of regulation the exclusive means of regulating real estate brokers. (See Ill. Rev. Stat. 1987, ch. 111, par. 5833.) Contrarily, defendants argue that the Real Estate License Act regulates an area distinct from those areas regulated by Mount Prospect's Ordinance. Hence, the defendants argue that each enactment regulates and licenses a wholly independent activity and, as such, the enactments do not conflict.

▪▪▪ The Illinois Constitution provides that "[h]ome rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive." (Ill. Const. 1970, art. VII, §6(i).) Furthermore, if a statute is intended to declare that a power or function in an area is to be exclusively exercised by the State, it must expressly so provide. *Beverly Bank v. County of Cook* (1987), 157 Ill. App. 3d 601, 605, 510 N.E.2d 941, 944.

▪▪▪ The Real Estate License Act, in accordance with article 7, sections 6(h) and (i), of the Illinois Constitution, did provide that the powers and functions set forth in the Act were exclusive State powers and functions. (Ill. Rev. Stat. 1987, ch. 111, par. 5833.) However, as argued by the defendants, these provisions relate only to the licensing, evaluation and regulation of real estate brokers, and not to landlord-tenant relationships or to the owning and managing of rental housing. (See *Chicago Board of Realtors v. City of Chicago* (7th Cir. 1987), 819 F.2d 732, 740 (where the Seventh Circuit also observed that the Real Estate Licensing Act was concerned solely with the licensing of real estate brokers and did not preempt home rule units in the area of landlord-tenant law).) Construing the powers of a home rule unit liberally, as we must, we find that the Village here could regulate and license owners and managers of rental housing, even if those owners and managers were also real estate brokers, and that that power was not preempted by the Real Estate License Act. We believe that the activities regulated by the State and by the Village of Mount Prospect are wholly separate from, and independent of, one another. The Ordinance is, as it states, intended only to cover the activity involved in the rental of dwelling units, for the purpose of maintaining and improving the quality of rental housing within the community, which is an area not regulated by, and thus not preempted by, the Real Estate License Act.

In their third issue on appeal, defendants defend section

23.1808(D)(1)(a) of their Ordinance, which authorizes a tenant to withhold rent under ‍ certain circumstances. Specifically, section 23.1808(D)(1)(a) provided:

> "[W]here the landlord breaches his obligations to render the rental unit habitable and maintain the same in good repair, the tenant may:
>
>> *** notify the landlord of his intention to withhold from the monthly rent an amount which reasonably reflects the reduced value of the premises or the cost of obtaining compliance, but not exceeding 75% of the monthly rent and to deposit said amount, with the Village of Mount Prospect along with a non-refundable filing fee of Ten Dollars ($10.00). If the landlord fails to correct the condition within seven (7) days after being notified by the tenant, the tenant may, during the time such failure continues, deduct from the rent the stated amount and deposit it with the Village which will hold the same and use its best efforts to resolve the situation." (Mount Prospect, Ill., Ordinance 3366, §23.1808(D)(1)(a) (September 6, 1983).)

The trial court held that this provision was an unconstitutional deprivation of the plaintiffs' property without due process.

We disagree and find this provision of the Ordinance, allowing a tenant to withhold up to 75% of his rent, to be constitutional and also find that it does not deprive the landlord of his property without due process. Although we agree with the proposition that a tenant remains liable for rent as long as he is in possession of the rented premises, it is not unconstitutional under either the Federal or Illinois Constitution to allow a tenant to withhold rent under proper circumstances. (*Pole Realty Co. v. Sorrells* (1981), 84 Ill. 2d 178, 183, 417 N.E.2d 1297, 1300; *Jack Spring, Inc. v. Little* (1972), 50 Ill. 2d 351, 359, 280 N.E.2d 208, 213.) Actually, the Ordinance here requires the tenant to continue to pay rent, albeit to pay it in escrow to the Village of Mount Prospect.

Similar provisions have been upheld against charges that they were an unconstitutional deprivation of property in *Chicago Board of Realtors* and in *Create*. (*Chicago Board of Realtors*, 819 F.2d 732; *Create*, 85 Ill. 2d 101, 421 N.E.2d 196.) The provisions in those cases, however, did not even contain the safeguard present here that the tenant pay the rent into escrow. (See *Chicago Board of Realtors*, 819 F.2d at 738; *Create*, 85 Ill. 2d at 106-07, 421 N.E.2d at 198.) Under the Mount Prospect Ordinance, the landlord is assured that his rent money will be available to him once he repairs the property or rectifies the problem

which renders the property uninhabitable. Inasmuch as our supreme court in *Create* has upheld similar provisions which provided even less protection of the plaintiffs' interests, we find the trial court's ruling that the Ordinance provision here was an unconstitutional deprivation of property to be error.

Defendants' fourth contention on appeal is that the trial court improperly ruled that section 23.1808(D)(1)(b) of the Ordinance was unconstitutional because it imposed a waiting period. Under that section, before the tenant or landlord can go to court to assert his rights, he must wait for a period of 21 days beginning at the time that a tenant notified his landlord of his intention to withhold rent. The trial court held that this provision amounted to an unconstitutional denial of access to the courts.

We disagree. We believe this 21-day waiting period was merely a notice provision and again was similar to the provision that the supreme court upheld in the *Create* case. In *Create*, the supreme court ruled that the provision of the Evanston ordinance requiring a landlord to give a 10 days' notice to a tenant before the landlord could pursue his remedies for nonpayment of rent was constitutional. (*Create*, 85 Ill. 2d at 106, 421 N.E.2d at 198.) The court there held that such a provision was solely a notice provision and that it did not place a condition or barrier upon a citizen's access to the courts. *Create*, 85 Ill. 2d at 116, 421 N.E.2d at 203.

Likewise, the provision here does not prevent a landlord or tenant from seeking relief in the courts, since either party is free to file suit once the notice period has expired. The fact that the notice period here is 21 days, while the notice provision in *Create* was 10 days, is not, in our judgment, a critical difference. We do not find the 21-day period substantially different from the 10-day period upheld in *Create*. We agree that at some point the delay might be so long that it could amount to a denial of access to the courts, but we are not presented with such a case here. Accordingly, we hold the trial court improperly found that the Ordinance's 21-day notice period provision was an unconstitutional limitation on access to the courts.

The defendants contend in their fifth argument that the trial court erroneously found that the Ordinance dictated State court procedures and rules. The provisions complained of by the plaintiffs provide that a tenant may counterclaim for any amount due him under the rental agreement in an action by a landlord for rent or for possession, and that a court in such a case may order the tenant to pay all rents owed, or thereafter accruing, into court, pending the outcome of the case. (Mount Prospect, Ill., Ordinance 3366, §23.1808(E)(1) (September 6,

1983).) In their amended complaint, plaintiffs alleged that the Ordinance was void because of this provision, which they claimed allowed tenants to file counterclaims in forcible detainer actions, and this, they assert, is contrary to settled law. The trial court held that the Ordinance provision "purport[ed] to define the courts [*sic*] role in forcible detainer cases" and was, accordingly, unconstitutional.

At the outset, we note that plaintiffs mistakenly assert that allowing a tenant to counterclaim in a forcible detainer action is contrary to settled law. Matters germane to a forcible detainer action may be introduced by the defendant through a counterclaim or by raising equitable defenses. (*Jack Spring*, 50 Ill. 2d at 359, 280 N.E.2d at 213; *Rosewood Corp. v. Fisher* (1970), 46 Ill. 2d 249, 255, 263 N.E.2d 833, 837; *Rodriguez v. Owaynat* (1985), 137 Ill. App. 3d 1017, 1021, 485 N.E.2d 438, 441-42.) Our supreme court has defined "germane" as closely related, relevant, or pertinent. (*Rosewood Corp.*, 46 Ill. 2d at 256, 263 N.E.2d at 838.) Examples of matters held to be germane to a forcible entry and detainer action include: whether the landlord had breached an express covenant to repair (*Peoria Housing Authority v. Sanders* (1973), 54 Ill. 2d 478, 483, 298 N.E.2d 173, 175; *Jack Spring*, 50 Ill. 2d at 359, 280 N.E.2d at 218); whether the landlord brought his forcible entry and detainer action in retaliation for complaints brought by the tenant to the housing authority (*Clore v. Fredman* (1974), 59 Ill. 2d 20, 27, 319 N.E.2d 18, 22); and defenses which challenge the landlord's right to rent or possession (*Daehler v. Oggoian* (1979), 72 Ill. App. 3d 360, 364, 390 N.E.2d 417, 421).

In this case, the provision at issue here provided that "the tenant may counterclaim for any amount which he may recover under the rental agreement or this Article." (Mount Prospect, Ill., Ordinance 3366, §23.1808(E) (September 6, 1983).) Presumably, any matter arising under the rental agreement or the Village's Ordinance would be germane to the issue of whether the landlord is entitled to possession or rent. Further, if a court found that the matter raised by the tenant in his counterclaim was not germane to the forcible entry and detainer action, nothing in the Ordinance prevents a court from striking the counterclaim.

Furthermore, the mere fact that an ordinance defines notice procedures, the duties of the parties, and the remedies available to the parties does not interfere with the court system. Our courts are often requested to enforce or interpret municipal ordinances. (*Create*, 85 Ill. 2d at 116, 421 N.E.2d at 203.) In fact, the Evanston ordinance that was upheld in *Create* contained provisions authorizing remedies which were virtually identical to the provisions at issue in this case. (See *Cre-*

*ate*, 85 Ill. 2d at 106-07, 421 N.E.2d at 198; City of Evanston, Ill., Residential Landlord and Tenant Ordinance §5—3—7—4 (June 1983).) Significantly, in both *Create* and in this case, the provisions challenged as impermissibly dictating court procedures used the word "may" in defining available remedies. (See *Create*, 85 Ill. 2d at 106-07, 421 N.E.2d at 198; Mount Prospect, Ill., Ordinance 3366, §23.1808(E)(1) (September 6, 1983).) At most, we believe the provision challenged here only sets forth additional remedies that a court may employ. We cannot see how such a provision impermissibly dictates court procedures. Thus, we find that *Create* controls and find that the provision allowing a tenant to file a counterclaim is constitutional.

■■■ The sixth and final argument of the defendants on appeal is that the trial court erroneously determined that the Village could not act as trustee in escrow for any rents withheld by tenants. The provision of the Ordinance at issue states that a tenant will "pay any withheld rents to the Village pending resolution of a dispute by mediation, lawsuit or otherwise." (Mount Prospect, Ill., Ordinance 3366, §23.1808(D)(1)(c) (September 6, 1983).) The plaintiffs argue that the trial court's ruling was correct because "a municipal corporation has no power to accept or hold property in trust for purely private purposes," quoting 10 E. McQuillin, Municipal Corporations §28.25, at 58 (3d ed. 1981). A home rule municipality in Illinois, however, may now constitutionally, as noted earlier, exercise any power or perform any function relating to its government and affairs. Ill. Const. 1970, art. VII, §6(a).

We hold that the disputed provision here is within the Village's constitutional powers to regulate matters relating to its government and affairs. By requiring a tenant to pay all accrued and accruing rent to the Village as trustee, the Ordinance merely insures that the party who ultimately prevails in the dispute, whether landlord or tenant, will receive all the money that is owed. Such a provision is clearly intended for public, as opposed to private, purposes and is related to the government and affairs of the Village of Mount Prospect.

For all of the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

Judgment reversed.

MANNING, P.J., and CAMPBELL, J., concur.