EDDY RODRIGUEZ, Plaintiff-Appellee, v. MARK OWAYNAT, d/b/a That Taco Joint, Defendant-Appellant.

First District (2nd Division)   No. 85—257

Opinion filed October 29, 1985.

Max A. Abrams, of Chicago (Sidney Z. Karasik, of counsel), for appellant.

Diego Rangel, of Rangel & Rangel & Associates, of Chicago (Martha B. Weiss, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

Defendant Mark Owaynat appeals from a judgment of the circuit court, after a bench trial, in which he was ordered to vacate the premises occupied and operated by him as a tavern and to pay plaintiff $1,930 for rent and costs. On appeal, defendant contends: (1) that the trial court erred in refusing to vacate the judgment where he established during post-trial proceedings the existence of a meritorious defense which he presented with due diligence; (2) that the trial court erred in ruling that payments made by him were not a defense to the forcible entry and detainer action; and (3) that the evidence supported his claim that a fraud was committed upon the court, and plaintiff should have been required to answer the charge at an evidentiary hearing on the issue.

The record indicates that on November 19, 1984, plaintiff initiated a forcible entry and detainer action (Ill. Rev. Stat. 1983, ch. 110, par. 9—101 *et seq.*) against defendant, wherein he alleged that he was entitled to possession of the premises unlawfully occupied by defendant and requested damages for rent owed, a security deposit past due and water and sewer expenses. On December 21, 1984, trial was held where plaintiff was represented by counsel while defendant appeared *pro se.*

Plaintiff testified that he entered into a 10-year lease agreement, dated June 15, 1984, which had been drafted by defendant. Under its terms, defendant was to rent certain premises from plaintiff to be operated as a tavern. Plaintiff stated that defendant was to pay him $386 per month as rent plus a security deposit of $1,000. To date, however, defendant had not paid any money.

Defendant testified that the parties had agreed that defendant would repair the premises to alleviate all building code violations. Defendant explained that he made all repairs necessary in the build-

ing, from which he had saved the receipts and added that he was still owed money by plaintiff for that work. Defendant further asserted that he paid plaintiff a total of $9,000 to purchase the building, but stated that because plaintiff had not paid $7,000 in taxes due on the property, the deal was never closed.

Plaintiff responded that the lease on its face was clear and contained no mention of an option to purchase and no provision that defendant was to be paid for repairs to the premises. To the contrary, the relevant provision of the lease provided:

> "Lessor [plaintiff] states that there are no building/business violations and that he will pay for any violation corrections."

John Masterly testified that he represented defendant in the contractual arrangement between defendant and plaintiff for the sale of the premises leased by defendant from plaintiff. Masterly stated that defendant had paid plaintiff $3,000 towards the purchase of the building and explained that rent and other items were to be prorated at the closing. Masterly was not able to produce a copy of this contract, but he claimed to have copies of the checks tendered to plaintiff.

The circuit court found that: plaintiff had presented a *prima facie* case, proving that defendant was in possession of the premises; rent was owing but not paid; proper notice was served on defendant to vacate; defendant had failed to present evidence of an agreement for sale and was not entitled to a set-off pursuant to such agreement; and, defendant had failed to prove that building code violations existed which he corrected. Accordingly, the court denied defendant relief pursuant to this defense. Thereafter, the court found in favor of plaintiff, ordering defendant to vacate the premises and to pay plaintiff $1,930 plus costs.

Defendant subsequently retained counsel and filed a timely motion to vacate. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1203(a).) At the hearing on this motion, defendant presented written statements by city inspectors indicating that they had discovered several business and building code violations on the premises. Defendant also presented a receipt showing that a $6,000 down payment was made to plaintiff toward the purchase of the premises.[1] Defendant tendered to the court a variety of bills totaling $6,018 incurred by him in repairing the premises. He stated again that a contract for sale existed between the

---

[1]The receipt for this amount was made two months after the lease was to begin. In addition, a photocopy of a check for $3,000 designated as a "downpayment" for the premises was supposedly drawn by defendant's counsel on the day the lease was entered. The check was made payable to plaintiff's trial and appellate attorney as "escrowee."

parties, but he was not able to produce it. He added that the sole purpose of the lease was to procure a liquor license in the event that the real estate sale contract failed. Defendant contended that plaintiff's perjured testimony amounted to a fraud and asked that the judgment be vacated.

The circuit court found that defendant's post-trial evidence was insufficient to vacate the judgment. The court stated that in granting such relief it must find that newly discovered evidence, unobtainable at the time of trial, was presented; here, however, post-trial evidence presented by defendant could have been procured in time for trial and held that to grant defendant's motion to vacate in effect would be to give him a second chance to gather evidence. The court also commented that in a forcible entry and detainer action, its function was to hear issues of possession and rent arrearage only and therefore found that the other matters concerning an alleged contract for sale had not been adjudicated at trial and consequently the court would not now resolve the matter. Defendant's motion to vacate the judgment was denied.

I

On appeal defendant contends that the circuit court erred in refusing to vacate its judgment because he established the existence of a meritorious defense and acted with due diligence. Plaintiff responds that because defendant failed to allege any trial errors, the circuit court properly denied his motion.

■■ The purpose of a motion to vacate judgment is to alert the circuit court to errors it has committed and afford an opportunity for their correction. (*In re Marriage of Sanborn* (1979), 78 Ill. App. 3d 146, 396 N.E.2d 1192; *Abbey Plumbing & Heating, Inc. v. Brown* (1977), 47 Ill. App. 3d 719, 365 N.E.2d 115.) The circuit court may vacate a judgment even absent due diligence, however, where justice and fundamental fairness require such relief. *Czyzewski v. Gleeson* (1977), 49 Ill. App. 3d 655, 659, 364 N.E.2d 557; *Hunt v. General Improvements, Inc.* (1977), 48 Ill. App. 3d 421, 362 N.E.2d 1143.

■■ In the instant case, defendant, appearing at trial *pro se*, apparently failed to understand the nature of the court proceedings and his obligation to present evidence in support of his contentions that a contract for sale of the leased premises had been entered into by the parties. This evidence, presented by defendant's newly retained counsel on a motion to vacate the judgment, strongly indicated that if such evidence had been presented at the time of trial, the outcome of such trial might well have been different. We find, therefore, that any deficiencies in defendant's *pro se* defense were overcome by his timely motion

to vacate accompanied by evidence, unrefuted by plaintiff, that defendant had tendered, and plaintiff accepted, several large sums of money pursuant to an agreement for purchase of the premises.

Significantly, the circuit court commented that it believed defendant's testimony about the existence of the sales agreement, yet refused to vacate the judgment previously entered because the documentary evidence which would have supported defendant's claims was not timely presented at trial. Fundamental fairness and justice require that the circuit court vacate its prior judgment and consider this evidence upon its merits. (*Czyzewski v. Gleeson* (1977), 49 Ill. App. 3d 655, 364 N.E.2d 557; *Hunt v. General Improvements, Inc.* (1977), 48 Ill. App. 3d 421, 362 N.E.2d 1143.) For this reason, we reverse and remand.

## II

Defendant's second contention on appeal is that the circuit court erred in ruling that his repair expenditures and payments made to plaintiff pursuant to a real estate contract were not defenses to the forcible entry and detainer action. Plaintiff counters that evidence of a real estate sales contract presented by defendant at the hearing on the motion to vacate the judgment was not a valid defense to his action for possession.

Generally, a forcible entry and detainer action is a summary statutory proceeding to adjudicate rights to possession; it is to be unhampered and unimpeded by questions of title and other collateral matters not directly connected with the question of possession. (*Rosewood Corp. v. Fisher* (1970), 46 Ill. 2d 249, 263 N.E.2d 833.) A serious title dispute is not a proper issue to be resolved in such an action. (*Continental Illinois National Bank & Trust Co. v. Wilson* (1982), 103 Ill. App. 3d 357, 431 N.E.2d 1334.) Equitable defenses germane to the purpose of the proceedings may be raised, however. (*Jack Spring, Inc. v. Little* (1972), 50 Ill. 2d 351, 280 N.E.2d 208; *Hareas v. Kyriakopoulos* (1981), 101 Ill. App. 3d 393, 428 N.E.2d 500.)[2] In *Hareas v. Kyriakopoulos*, this court found that money expended by defendants as lessees when making improvements to the leased premises might have been germane to the action if the rental payments due and owing plaintiff were to be satisfied by such expenditure. There, however, defendants did not make such an allegation, and the court found that the mere expenditure of these funds in and of itself was not germane to the issue

---

[2] " 'Germane' has been judicially defined as meaning 'closely allied,' and is further defined *** as meaning: 'closely related; closely connected; relevant; pertinent; appropriate.' " *Rosewood Corp. v. Fisher* (1970), 46 Ill. 2d 249, 256, 263 N.E.2d 833.

of whether rent payments were due and owing.

In the instant case, defendant did allege that such expenditures for improvements were to be credited towards rent payments due plaintiff. Also, the lease between the parties provided that plaintiff as lessor would pay for any building and business violation corrections.

■ There are a number of other unexplained matters in the record. Among these is evidence that defendant tendered to plaintiff's attorney "as escrowee" on June 15, 1984, the date the lease was to go into effect, a check for $3,000 designated as a "downpayment" for the premises. A receipt for a $6,000 payment to plaintiff by defendant on August 24, 1984, with a notation that a balance of $11,000 would be payable at closing, is also found. These documents suggest a contract for sale of the premises was entered into by the parties. While defendant was unable to produce such contract, he contended that only a single copy existed, which was in plaintiff's possession. Plaintiff did not deny the existence of such contract, but only stated that any evidence of a contract for sale was unrelated to the issue of nonpayment of rent.

That defendant would have made payments to plaintiff totaling $9,000 were there not some sort of a contractual agreement between the parties for sale of the premises taxes credulity. Questionable also is that plaintiff would claim that he was owed rent money by defendant when such an amount of money, representing several years' rent, had been paid to him only as rent. This evidence must be considered together with defendant's explanation that the lease agreement executed was solely for purposes of procuring a liquor license in the event something happened to prevent the consummation of the real estate contract. Plaintiff does not deny this allegation.

Evidence of ownership of real property may be germane to the issue of possession under the facts of this case, as well as whether rent payments are owing, since ownership may involve the transfer of possession. It was error for the circuit court to refuse to consider such evidence. Much of this complex transaction between the instant parties is unclear; consideration of all the evidence presented necessitates further clarification of the status of the parties regarding ownership and possession so that justice and fairness may prevail.

For the reasons set forth above, we reverse the judgment of the circuit court and remand this cause for a new trial.

Reversed and remanded.

STAMOS, P.J., and BILANDIC, J., concur.