A & H VENDING SERVICE, INC., *et al.*, Plaintiffs-Appellants, v. THE VILLAGE OF SCHAUMBURG, Defendant-Appellee.

First District (4th Division)   No. 86—3400

Opinion filed March 10, 1988.—Rehearing denied April 14, 1988.

William J. Harte, Lawrence T. Stanner, and William R. Brandstrader, all of Chicago, for appellants.

Marc Robert Chemers, of Pretzel & Stouffer, Chartered, and Jack M. Siegel, both of Chicago, for appellee.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The plaintiffs, operators and owners of coin-operated vending machines which dispense food, beverages, and other commodities, sought an injunction restraining the defendant, the Village of Schaumburg, from enforcing the provisions of its vending-machine licensing ordinances. It also sought a refund of all moneys for licensing fees paid on or after January 1, 1975. The plaintiffs claimed that the ordinances violated the powers granted to home rule units under article VII, section 6, of the Illinois Constitution. (Ill. Const. 1970, art. VII, §6.) The trial court granted the village's motion for judgment at the close of the plaintiffs' case and dismissed the action. The plaintiffs appeal.

The Village of Schaumburg is a home rule municipality located in Cook County. The vending-machine licensing ordinances set forth regulations, requirements, procedures, and the annual fees for the operation of vending machines in the village. The license fees set by the ordinances range from $2 for machines using a penny to $100 for machines using $1 or more.

Article VII of the Constitution is entitled "Local Government." Section 6 in pertinent part provides:

"Powers of Home Rule Units

(a) *** *Except as limited by this Section,* a home rule unit

may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power *to regulate* for the protection of the public health, safety, morals and welfare; *to license; to tax;* and to incur debt.

\* \* \*

(e) A home rule unit shall have only the power that the General Assembly may provide by law \*\*\* (2) to *license for revenue* or impose taxes upon or measured by income or earnings or upon occupations." (Emphasis added.) (Ill. Const. 1970, art. VII, §§6(a), (e).)

The plaintiffs maintain that by enacting these ordinances, the village has imposed, in the guise of regulatory license, what is in fact licensing as a revenue measure, which is prohibited under section 6(e). The village contends that under section 6(a) this is a proper exercise of both its power to regulate for public health, safety, morals and welfare as well as its power to tax. The village further contends that even if the license is to be construed as a license for revenue, the ordinance is still valid under section 6(e) because the legislature has in fact given the village the statutory power to impose such a license fee. We believe the ordinance comes within the village's power to regulate for public health, safety, morals and welfare under section 6(a) and sustain the license fee on that basis. For that reason it is unnecessary to address the village's other contentions that the license fee can also be sustained as a tax measure under section 6(a) and as licensing for revenue pursuant to legislative authority under section 6(e).

■ Initially, it should be noted that the Illinois courts have not clearly defined what is meant by the power to license. As a result, the difference between licensing for the purposes of regulation and licensing for the purposes of raising revenue is not clear. An attempt to distill from the cases what is meant by the power to license leads to the following conclusions. When a governmental entity has been granted the power to license and regulate but not the power to tax, the Illinois courts have held that the license fee must be reasonably related to the cost of regulation. (*Arends v. Police Pension Fund* (1955), 7 Ill. 2d 250, 253, 130 N.E.2d 517, 519.) However, when the power to license and regulate is combined with the power to tax, the courts have upheld license fees geared to producing revenue. (*Village of East Alton v. Arst* (1944), 386 Ill. 224, 53 N.E.2d 929.) When the power to license is combined with the power to tax, the license fees do not have to be reasonably related to the cost of regulation. The term "license for revenue" has been used by the courts to describe those situ-

ations where a governmental unit which lacks the power to tax attempts to raise revenue through the exercise of its police power. *Paper Supply Co. v. City of Chicago* (1974), 57 Ill. 2d 553, 576, 317 N.E.2d 3, 14.

The confusion over when a governmental entity may only license for a regulatory purpose and when it may license to raise revenue has manifested itself in section 6 of article VII of the Illinois Constitution. The Illinois Constitution grants home rule units the powers to regulate, license and tax. It would appear under Illinois law that this grant of power allows home rule units to license for revenue, that is, to impose a license fee as a revenue measure without a regulatory purpose. However, section 6(e) prohibits licensing for revenue. It is unclear what the framers meant by including this prohibition. The debates during the Sixth Illinois Constitutional Convention underscore the confusion on the part of the drafters as to the meaning of licensing for revenue. Delegate Parkhurst commented:

> "The courts are still going to have to interpret what you mean by licensing for revenue. I don't know today—I don't think anybody knows what we mean specifically by licensing for revenue. Is that a tax? What do you mean by a license for revenue? What's it measured by?" 4 Record of Proceedings, Sixth Illinois Constitutional Convention 3196.

■ While case law and the constitutional debates illustrate that the definition of licensing for revenue is considerably clouded, it is clear that a license fee for regulatory purposes can be sustained as long as the license fee bears some reasonable relation to the cost of regulation. (*Arends v. Police Pension Fund* (1955), 7 Ill. 2d 250, 253, 130 N.E.2d 517, 519.) The burden of proof is upon those seeking to invalidate the fees to show the lack of any reasonable relation between the fee and the cost of enforcement. (*Village of Roxana v. Costanzo* (1968), 41 Ill. 2d 423, 425, 243 N.E.2d 242, 243.) Unless that fee is arbitrary or in great excess of the cost of enforcement and as long as the ordinances contain genuine regulatory provisions, the courts have been generous in sustaining a licensing fee for regulatory purposes. See *Larson v. City of Rockford* (1939), 371 Ill. 441, 444, 21 N.E.2d 396. See also *Village of Roxana v. Costanzo* (1968), 41 Ill. 2d 423, 243 N.E.2d 242; *City of Chicago v. Schall* (1954), 2 Ill. 2d 90, 116 N.E.2d 872.

The evidence presented by the plaintiffs at trial essentially consisted of an account of what is involved in the administration and enforcement of the licensing ordinances for approximately 1,100 vending machines. The administrative clerk in charge of issuing vending-ma-

chine licenses testified that her primary duties include preparing, updating and maintaining records, processing applications for new vending machines, billing, and collecting the annual license fee. A licensing enforcement officer testified that his duties include a physical inspection of every vending machine in the village to verify the location of the machine, the vending-machine company, the type of machine used, and the license fee assigned to the particular machine. A sanitarian for the village explained the procedure which she and other sanitarians used to make health inspections. Expert testimony was presented which focused on the proper methods of inspecting the vending machines for health purposes.

Based on the testimony at trial, in addition to various records and documents offered into evidence, the plaintiffs concluded in their memorandum of law in opposition to the defendant's motion for judgment at the close of the plaintiffs' case that the ratio of revenue to cost of enforcement is four or five to one. This ratio was based on evidence presented as to the amount of time spent by employees in discharging their duties and their respective salaries.

*Quad Canteen Service Corp. v. Ruzak* (1980), 85 Ill. App. 3d 256, 406 N.E.2d 616, dealt with an issue almost identical to that in the instant case, that is, whether a vending-machine ordinance constituted licensing for revenue. There the license fees set by the ordinance averaged approximately $50 per year at a cost which experts testified would be no more than $3 to $4 per machine. Thus, the revenue versus cost ratio was approximately 10 to 1. The court concluded that the ordinance was unconstitutional because the fee schedule far exceeded reasonable costs of administration and enforcement of the ordinance. The court noted that no inspections were done until after the lawsuit was filed; that the person who made the inspection was not a sanitarian but rather a police officer; that only four days a year were spent in inspecting the machines; and that the inspections amounted to little more than ascertaining whether the machines had a license sticker.

The ordinances in the instant case clearly have regulatory provisions. Enforcement of these provisions is accomplished through a program of administration and inspection. The inspection involves both an examination of each machine by a licensing enforcement officer to verify that it is licensed properly as well as an examination of each machine by a sanitarian to ensure that it is in a sanitary condition. Bearing in mind the liberal interpretation of reasonable relation and the broad power given to home rule units in article VII, section 6(m), which states that the powers and functions of home rule units shall be

construed liberally, we cannot say that a regulatory ordinance which is enforced and results in a five to one ratio of revenue to cost of enforcement is unreasonable.

For the foregoing reasons, the decision of the trial court is affirmed.

Affirmed.

JOHNSON and McMORROW, JJ., concur.