# Illinois Official Reports

## Appellate Court

*County of Cook v. Village of Bridgeview*, 2014 IL App (1st) 122164

| | |
|---|---|
| Appellate Court Caption | THE COUNTY OF COOK, a Body Politic and Corporate, Plaintiff-Appellee, v. THE VILLAGE OF BRIDGEVIEW, a Municipal Corporation, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-12-2164 |
| Filed | April 25, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant village was properly enjoined from enforcing its ordinance prohibiting residents from operating feral cat colonies within the village based on the trial court's finding that the village lacked the statutory and home rule authority to enact the ordinance, since the village's reliance on its home rule authority is negated by the greater interest of the state and the counties in dealing with the feral cat problem, and the authority granted to municipalities by section 24 of the Animal Control Act to "prohibit animals from running at large" and to "regulate dogs, cats and other animals" was exceeded by the village's ordinance prohibiting the operation of feral cat colonies. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-39696; the Hon. Mary Anne Mason, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Joseph Cainkar, of Louis F. Cainkar Ltd., of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Kent S. Ray, Paul A. Castiglione, and Sisavanh B. Baker, Assistant State's Attorneys, of counsel), for appellee.

Panel

JUSTICE HALL delivered the judgment of the court, with opinion. Presiding Justice Rochford and Justice Reyes concurred in the judgment and opinion.

## OPINION

¶ 1    This appeal involves two apparently conflicting ordinances that regulate feral cat colonies within Cook County. One of the ordinances was adopted by the county. The other ordinance was adopted by the Village of Bridgeview, a municipality located within Cook County.

¶ 2    In 1973, the Illinois General Assembly enacted the Animal Control Act (Ill. Rev. Stat. 1973, ch. 8, ¶ 351 *et seq.*) (now 510 ILCS 5/1 *et seq.* (West 2010)) in an effort to, among other things, control the stray animal population and prevent and control the spread of rabies in Illinois. See *Village of Swansea v. County of St. Clair*, 45 Ill. App. 3d 184, 186 (1977); *McQueen v. Erickson*, 61 Ill. App. 3d 859, 864 (1978). In 1977, based in part upon the authority vested in it under sections 3 and 5 of the Animal Control Act, the Cook County Board of Commissioners adopted the Cook County Animal and Rabies Control Ordinance (Cook County Ordinance No. 99-O-25, § 10-1 *et seq.* (Jan. 3, 1977))[1].

---

[1]Section 3 of the Animal Control Act provides in relevant part:

"The County Board Chairman with the consent of the County Board shall appoint an Administrator. Appointments shall be made as necessary to keep this position filled at all times. The Administrator may appoint as many Deputy Administrators and Animal Control Wardens to aid him or her as authorized by the Board." 510 ILCS 5/3 (West 2010).

Section 5 of the Animal Control Act delineates the duties and powers of an administrator, providing in relevant part:

"(a) It shall be the duty of the Administrator or the Deputy Administrator, through sterilization, humane education, rabies inoculation, stray control, impoundment, quarantine, and any other means deemed necessary, to control and prevent the spread of rabies and to exercise dog and cat overpopulation control. ***

(b) Counties may by ordinance determine the extent of the police powers that may be exercised by the Administrator, Deputy Administrators, and Animal Control Wardens, which powers shall pertain only to this Act. The Administrator, Deputy Administrators, and Animal Control Wardens may issue and serve citations and orders for violations of this Act." 510 ILCS 5/5(a), (b) (West 2010).

¶ 3    In October 2007, the Cook County Board of Commissioners amended the ordinance by adding a section dealing with feral cats, the "Managed Care of Feral Cats" Ordinance (Cook County Ordinance No. 07-O-72 (Oct. 16, 2007)) (feral cat ordinance). The feral cat ordinance was enacted to further prevent the spread of rabies by reducing and controlling the feral cat population.

¶ 4    The feral cat ordinance permits individuals living within Cook County (the County), including those living in the Village of Bridgeview, to maintain feral cat colonies provided they participate in trap, neuter, and release (TNR) programs sponsored by approved humane societies. Cook County Ordinance No. 07-O-72, § 10-97 (Oct. 16, 2007). Under the privately funded TNR programs, citizen volunteers, referred to as caretakers, humanely trap feral cats and then take them to veterinarians or humane societies to be microchipped, vaccinated and spayed or neutered, and eventually released back to their outdoor colonies. Cook County Ordinance No. 07-O-72, § 10-95 (Oct. 16, 2007).

¶ 5    Dr. Donna M. Alexander, a veterinarian and the administrator of the County's animal and rabies control department, testified at her deposition that the TNR programs had saved the County over $1.5 million, primarily resulting from having fewer feral cats to euthanize. Dr. Alexander claimed that prior to adoption of the TNR programs, local municipalities were trapping and euthanizing approximately 500 to 600 feral cats per year, at a cost to taxpayers of about $135 per cat. The doctor testified that since implementation of the programs, over 9,000 feral cats have been vaccinated against rabies, and spayed and neutered, resulting in a smaller feral cat population through natural attrition.

¶ 6    The Village of Bridgeview is a home rule municipality located within Cook County. On April 1, 2009, Bridgeview adopted ordinance No. 09-04. This ordinance prohibits Bridgeview residents from operating feral cat colonies within Bridgeview's corporate limits and imposes fines on those who fail to comply.

¶ 7    The County filed the lawsuit at issue in this appeal, alleging that the Bridgeview ordinance infringed upon its statutory authority to control and prevent the spread of rabies and control feral cats within Cook County. The County sought a declaration that Bridgeview lacked the statutory and home rule authority to enact its ordinance. The County also sought an injunction prohibiting Bridgeview from enforcing its ordinance.

¶ 8    On the parties' cross-motions for summary judgment, the trial court entered judgment in favor of the County and against Bridgeview. The court determined that Bridgeview lacked the statutory and home rule authority to enact its ordinance. The court also enjoined Bridgeview from enforcing its ordinance. Bridgeview now appeals. For the reasons that follow, we affirm.

¶ 9                                    ANALYSIS

¶ 10   Our review of the trial court's order granting summary judgment is *de novo*. *Sears Roebuck & Co. v. Acceptance Insurance Co.*, 342 Ill. App. 3d 167, 171 (2003). Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmoving party, indicate there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010); *Bier v. Leanna Lakeside Property Ass'n*, 305 Ill. App. 3d 45, 50 (1999). As in this case, where the parties file cross-motions for summary judgment, they invite the court to decide the issues presented as a

matter of law. *Lexmark International, Inc. v. Transportation Insurance Co.*, 327 Ill. App. 3d 128, 134 (2001).

¶ 11     The resolution of this appeal primarily turns on whether Bridgeview exceeded its home rule authority under article VII, section 6(a), of the 1970 Illinois Constitution by enacting its ordinance. Based on the following analysis, we find the trial court correctly ruled that Bridgeview exceeded its home rule authority in enacting the ordinance, rendering it invalid.

¶ 12     Section 6(a) of article VII of the 1970 Illinois Constitution provides in relevant part:

"Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Ill. Const. 1970, art. VII, § 6(a).

¶ 13     The 1970 Illinois Constitution limits a home rule unit to legislation " 'pertaining to its government and affairs.' " *City of Chicago v. Village of Elk Grove Village*, 354 Ill. App. 3d 423, 426 (2004). "*[A]ny* analysis regarding the validity of home rule power must begin with a determination of the legal question of whether the problem pertains to local government and affairs, as required by section 6(a)." (Emphasis in original.) *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2013 IL 110505, ¶ 101 (Freeman, J., dissenting, joined by Burke, J.). "An ordinance pertains to the government and affairs of a home rule unit where the ordinance relates to problems that are local in nature rather than State or national." *Village of Bolingbrook v. Citizens Utilities Co. of Illinois*, 158 Ill. 2d 133, 138 (1994).

¶ 14     In Illinois, the problem of animal control, overpopulation, and the spread of rabies is both a local and statewide concern. When a problem has a local as well as a statewide or national impact, courts must weigh the relevant factors set out in *Kalodimos v. Village of Morton Grove*, 103 Ill. 2d 483 (1984). See *Village of Bolingbrook*, 158 Ill. 2d at 139.

¶ 15     In *Kalodimos*, the court stated: "Whether a particular problem is of statewide rather than local dimension must be decided not on the basis of a specific formula or listing set forth in the Constitution but with regard for the nature and extent of the problem, the units of government which have the most vital interest in its solution, and the role traditionally played by local and statewide authorities in dealing with it." *Kalodimos v. Village of Morton Grove*, 103 Ill. 2d 483, 501 (1984). Therefore, we must examine and determine the following: the nature and extent of the problem; the unit of government having a more vital interest in resolving the problem; and the role traditionally played by local and statewide authorities in dealing with the problem.

¶ 16     The nature of the problem is the spread of rabies by an overpopulation of feral cats. In regard to the extent of the problem, Dr. Alexander testified that the feral cat problem was not only a statewide concern, but also a national concern. Dr. Alexander maintained that the Bridgeview ordinance prohibiting feral colonies within Bridgeview had a chilling effect on those Bridgeview residents who might desire to become feral cat caretakers. The doctor claimed that in this sense, the Bridgeview ordinance undermined efforts to encourage citizens throughout Cook County to participate in the TNR programs. Dr. Alexander also noted that feral cats are freely roaming animals knowing no political boundaries, and as a consequence, the Bridgeview ordinance affected bordering municipalities such as Hickory Hills and Palos Heights.

¶ 17    In regard to the second *Kalodimos* factor, we find that counties in Illinois have a more vital interest in controlling the feral cat population and the spread of rabies than do local municipalities. The General Assembly, through the Animal Control Act, has determined that the issues of animal control, overpopulation, and the control of rabies are more effectively addressed at the county level. We believe this is a sound approach given the fact that feral cats freely roam across neighboring municipalities and that home rule municipalities cannot legislate outside their geographical borders.[2] Counties have greater geographical reach and thus can more comprehensively and effectively address feral cat control than local municipalities.

¶ 18    Regarding the third and final *Kalodimos* factor, we find that the state and counties have had a more traditional role in animal control and preventing the spread of rabies than local municipalities. The current version of the Animal Control Act was derived from legislation related to preventing the spread of rabies.

¶ 19    In 1927, the General Assembly passed an act known as "An Act to prevent the spread of rabies," authorizing the Illinois Department of Agriculture "to prevent the spread of rabies among dogs." Ill. Rev. Stat. 1927, ch. 8, ¶ 23b. In 1953, the General Assembly repealed "An Act to prevent the spread of rabies," replacing it with the Rabies Control Act. Ill. Rev. Stat. 1953, ch. 8, ¶¶ 23e to 23x. The Rabies Control Act mandated each county board to appoint a licensed veterinarian as a rabies inspector to administer and enforce provisions of the act. Ill. Rev. Stat. 1953, ch. 8, ¶ 23g. Finally, in 1973 the Generally Assembly repealed the Rabies Control Act and replaced it with the present day Animal Control Act.

¶ 20    Thus, the state, through the Illinois Department of Agriculture, has administered rabies control programs since 1927 and has delegated some authority over rabies control to the counties as early as 1953. In addition, counties have exercised authority over controlling the feral cat population and the spread of rabies through the Animal Control Act since 1973.

¶ 21    In sum, the state and counties have a greater interest and a more traditional role in addressing the issues of animal control and preventing the spread of rabies than do local municipalities. These issues are matters of statewide concern and do not strictly pertain to the government and affairs of Bridgeview as a home rule unit, within the meaning of article VII, section 6(a), of the 1970 Illinois Constitution. Bridgeview's ordinance was an invalid exercise of its home rule authority.

¶ 22    Bridgeview alternatively argues that even if it lacked the home rule authority to adopt its ordinance, it retained the statutory authority to do so. In support of this argument, Bridgeview relies on section 24 of the Animal Control Act, which provides:

> "Nothing in this Act shall be held to limit in any manner the power of any municipality or other political subdivision to prohibit animals from running at large, nor shall anything in this Act be construed to, in any manner, limit the power of any municipality

---

[2]"[T]he narrow approach to feral cat management that emphasizes *** enforcement of local ordinances needs to be enhanced by a broader, more far-reaching vision. Given their nature, feral cats will roam into neighboring jurisdictions with conflicting animal control ordinances, leaving them and their caretakers vulnerable to differing consequences depending on the local laws. Accordingly, cooperation among local governments on a state or regional level is necessary to achieve a consistent and pragmatic approach to feral cat management." Verne R. Smith, *The Law and Feral Cats*, 3 J. Animal L. & Ethics, May 2009, at 7, 26.

or other political subdivision to further control and regulate dogs, cats or other animals in such municipality or other political subdivision provided that no regulation or ordinance is specific to breed." 510 ILCS 5/24 (West 2010).

¶ 23       Bridgeview's arguments concerning section 24 of the Animal Control Act turn on statutory construction. Issues of statutory construction are questions of law, which we review *de novo*. *Krautsack v. Anderson*, 223 Ill. 2d 541, 553 (2006). The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Croissant v. Joliet Park District*, 141 Ill. 2d 449, 455 (1990). The best evidence of this intent is the language of the statute itself, which must be given its plain and ordinary meaning. *Krautsack*, 223 Ill. 2d at 553.

¶ 24       Section 24 of the Animal Control Act recognizes a municipality's authority to "prohibit animals from running at large," and to "further control and regulate dogs, cats or other animals." 510 ILCS 5/24 (West 2010). Therefore, under the plain language of section 24, Bridgeview has the authority to adopt provisions prohibiting feral cats from running at large or it can impose further, stricter requirements than those imposed by the County. Exercising such authority would not be improper. See, *e.g.*, *Village of Wauconda v. Hutton*, 291 Ill. App. 3d 1058, 1060-61 (1997) ("[a] local ordinance may impose more rigorous or definite regulations in addition to those enacted by the state legislature so long as they do not conflict with the statute").

¶ 25       However, Bridgeview exceeded its authority under section 24 of the Animal Control Act by making it unlawful to operate feral cat colonies within its corporate limits. The trial court correctly determined that Bridgeview not only lacked the home rule authority to enact its ordinance, but also lacked the statutory authority to do so.

¶ 26       For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 27       Affirmed.